**C. & J. CAMP v. MILLER, Alien Property Custodian, et al.**

(District Court, S. D. Florida. July 25, 1924.)

No. 284.

1. **Evidence** ☞70—**Rebuttable presumption that note, in terms payable in dollars, represented entire agreement as to medium of payment.**

From the fact of a note being in terms payable in dollars arises a presumption of fact, subject to rebuttal, that it represented all of the transaction, in so far as the medium of payment is concerned.

2. **Evidence** ☞442(1)—**Intent, shown by correspondence and conduct to have note paid in marks, prevails over note in terms payable in dollars, so to bar evidence of prior and contemporaneous agreement.**

Intent of creditor and debtor to have an advance returned in "marks," and not in "dollars," conclusively shown by correspondence preceding advance, and creditor's subsequent conduct, will prevail over debtor's note for the advance, in terms, for convenience in bookkeeping, payable in dollars; the note not embodying the entire negotiation, so as to bar evidence of prior and contemporaneous statements.

3. **War** ☞12—**Interest not allowed against Alien Property Custodian.**

Though complainants be entitled to return of money paid by them to Alien Property Custodian, under legal pressure, interest cannot be allowed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. War ⟨key⟩12—Note payable in marks held not payable according to their value at due date.**

The parties to a note payable in "marks," before maturity having by separate instrument continued their contractual relations till cessation of hostilities, necessarily extending time of payment, and the debtors at the earliest opportunity having procured marks and tendered them to the Alien Property Custodian, payment according to the value of marks when the note became due by its terms will not be required.

In Equity. Suit by C. & J. Camp against Thomas W. Miller, as Alien Property Custodian, and another. Decree for complainants.

See, also, 280 Fed. 520.

Anderson & Anderson, of Ocala, Fla., for complainants.

Dean H. Stanley and A. R. Johnson, Jr., Sp. Asst. Attys. Gen., for Alien Property Custodian.

CALL, District Judge. Complainants filed their bill against the Alien Property Custodian and the Secretary of the Treasury, claiming the return of certain moneys, paid by them to the Alien Property Custodian on account of certain debts due an alien enemy. Subsequently it was stipulated between the parties that the Secretary of the Treasury should be dismissed from said suit, and the suit proceed against the Alien Property Custodian alone.

The bill alleges, among other things, that the complainants are engaged in mining and selling phosphate; that prior to 1915, and during said year, they had contracts to sell phosphate to a German firm in Hamburg; that the course of dealing between the parties was that advances were made to the complainants by the German firm, and phosphate was shipped by them to the German firm, and credit given at the contract price for such shipments; that, owing to the existence of a state of war between Germany and the European Allies, all shipments of phosphate had virtually ceased; that about the 1st of January, 1915, complainants applied to said German firm, through the agent residing in Ocala, Fla., for an advance of $30,000; that thereafter complainants were notified by said agent that the German firm was willing to advance the sum on condition that complainants should be debited with the amount in reichsmarks actually paid by them for the $30,000 in American currency, and that the repayment of said amount so advanced should be made in reichsmarks; that pursuant to said agreement the German firm forwarded to complainants the sum of $15,000, for which 72,900 reichsmarks was paid; that thereafter the complainants were informed that their account had been debited with 72,900 reichsmarks, with interest, from the date the $15,000 was so purchased; that subsequently the balance of $15,000 was furnished the complainants, but this amount was not purchased with reichsmarks, and the complainants' account was debited with $15,000; that two notes were executed to the German firm, for $15,000 each, one of said notes bearing date April 1, 1915, and the other April 29, 1915; that said first-mentioned note was made payable in dollars only as a matter of convenience to the parties in keeping their records, but in fact said note was given for the

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

said 72,900 reichsmarks, paid for the $15,000 first advanced under the agreement with the German firm, and which was to be repaid in 72,900 reichsmarks, with interest thereon at 8 per cent., without reference to the rate of exchange at the time of repayment; that thereafter, December 31, 1915, and December 31, 1916, complainants received statements of account from the German firm, showing that the note of April 1, 1915, was debited as 72,900 marks; that on December 8, 1917, report was made to the Alien Property Custodian of the amount of the two notes, together with the amount of an open account, due by complainants to the German firm; that the note of April 1, 1915, was reported as dollars, not marks, because appearing on the books of complainants, believing that, when payment of said note should be demanded, it would be discharged in marks as per the condition on which the advance was made; that about the same time the agent of the German firm made report to the Alien Property Custodian of effects in his hands belonging to alien enemies, showing that said note of April 1, 1915, was to be discharged by the payment of 72,900 German marks, with interest, without regard to whether the German mark cost more or less than the rate of exchange at the time the advance was made; that thereupon the two notes were deliverd to the Alien Property Custodian, and pursuant to act of Congress such Custodian became the legal holder of said notes; that on the 1st day of June, 1918, the Alien Property Custodian demanded payment of the amounts theretofore reported due the alien enemy, and said complainants paid to said Custodian the open account and the note of April 29, 1915, and informed said Custodian that said note of April 1st was payable in 72,900 German marks, by reason of the condition imposed on the advance by the German firm, and that they were willing to pay said note in 72,900 German marks, with interest, just as soon as same could be obtained; that July 1, 1919, was the earliest day the German marks could be obtained, and upon that day complainants obtained 97,994 German marks for that purpose, and on the 18th of July, 1919, forwarded same to the Alien Property Custodian, with the request that same be applied to the discharge of said note of April 1, 1915; that said Custodian refused to accept said marks in discharge of said note, and demanded that complainants pay said note, with interest, in dollars; that in October, 1921, the Alien Property Custodian by legal proceedings enforced this demand, and on March 14, 1923, complainants paid said Custodian the note, with interest, making a total of $24,546.67; that in October, 1919, the German firm rendered to complainants full statements of account, charging them with the note of April 1, 1915, in the currency of the republic of Germany. The bill then alleges the filing of application for an executive order for the return of the money paid the Custodian in satisfaction of the note of April 1, 1915, and denial of same. The bill, among other prayers, prays for the return of the amount paid the Custodian on March 14, 1923, with interest from the date of payment.

To this bill the Alien Property Custodian and the Treasurer of the United States filed a motion to dismiss on five grounds. These grounds all go to the right of complainants to the relief sought in the suit—the

return of the money paid March 14, 1923. An answer was also filed, admitting the official character of the defendants, the execution of the promissory note by complainants of April 1, 1915, the payment of the open account, and the note of April 29, 1915, the collection of $24,546.-67 by legal proceedings, the making of the application for executive order, and refusal of same. The answer sets out the report of the complainants to the Alien Property Custodian, showing indebtedness to the alien enemy as of February 3, 1917, "one note dated 4/1/15, $15,000, with 8 %," the report of the agent of the alien enemy as follows: "Promissory note dated April 1, 1915, for $15,000, payable on or before December 31, 1916, with interest at the rate of 8 per cent. per annum, secured by bill of sale on 5,000 tons of phosphate rock stored at the mines of said C. & J. Camp in Marion and Citrus counties, Florida, said bill of sale being recorded in Book Miscellaneous 1, page 590, in the public records of Marion county, Florida, and in the public records of Citrus county, Florida, in Miscellaneous Book 3, page 416;" that all the property so reported was delivered to said Custodian. The answer, alleging further, says that by letter of July 19, 1919, the complainants transmitted to the Custodian a check for 97,994 marks to pay the note of April 1, 1915, and said draft was returned to complainants with the information that the Custodian would not accept said marks in payment of the note, and requiring the payment in dollars. The answer, as to many allegations of the bill, say they have no knowledge and require strict proof.

Upon the final hearing, solicitor for the defendants moved to submit the motion to strike the bill before proceeding to take testimony, but the hearing of this motion was postponed until final argument, and the court proceeded with taking the testimony, whereupon the complainants produced their testimony and rested the case. The defendants took no testimony, and the case is to be considered on the motion to strike the bill of complaint and the testimony of complainants.

[1, 2] The defendants made a motion to dismiss the bill, and the consideration of said motion was postponed by the court until the final hearing of the cause, after the testimony was taken. The motion to dismiss admits, for the purpose of testing the sufficiency of the bill, the truth of the allegations of the bill, and the disposal of this motion will settle the equities claimed by the complainants. The contention of the defendants is that all the prior correspondence between the German creditor and the complainants was merged in the promissory note given, and that said correspondence, before and subsequent to the giving of the note, is inadmissible to change or alter the medium of payment as named in the note. In considering this question it must be borne in mind that the Alien Property Custodian is not in the position of a holder in due course for value, but stands, in so far as the debtor is concerned, in the shoes of the German creditor.

It is admitted at the outset that, where the negotiations result in a writing embodying the entire agreement reached, oral and written statements prior to and contemporaneous with the making of the writing will not be heard to vary, alter, or contradict the writing. Mr. Wigmore (section 2430), treating of Partial Integration, gives three tests

by which to ascertain whether the writing, the promissory note in this case, embodies the entire agreement. The tests are as follows:

(1) "Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto."

(2) "This intent must be sought where always intent must be sought, in the *conduct and language* of the parties and the *surrounding circumstances*."

(3) "In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element* of *the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element."

Under the third test of Wigmore, as above set forth, the presumption would arise in this case that the promissory note, being payable in "dollars," represented all of the transaction, in so far as the medium of payment is concerned. This I understand to be a presumption of fact, subject to rebuttal. Applying the first and second tests above set out, is this presumption rebutted? There can be no doubt, from the allegations of the bill and the proofs taken before me of the intent of the parties as to the medium of payment of the advance, evidenced by this promissory note, judged by the correspondence preceding the advance, and the conduct of the creditor subsequent to making the advance. All of these indicate conclusively the intent of the creditor and debtor to have the advance returned to the creditor in German "marks," and not "dollars." If this intent is to prevail, then the promissory note, given payable in dollars, for convenience in bookkeeping, did not and was not intended to embody the entire negotiation, and the rule of evidence contended for the defendants does not apply, and the motion to dismiss must be denied.

[3, 4] The testimony introduced by the complainants, and admitted over the objection of the defendants, proves beyond the shadow of a doubt the allegations of the bill, and entitles the complainants to a return of the amount paid to the Alien Property Custodian under legal pressure. Interest on this amount is prayed. Interest cannot be allowed. Contention is made by defendants that this court should ascertain the value of $15,000 and interest in German marks at the due date of the note. The evidence shows that, prior to the date when the note became due according to its terms, the parties by a separate instrument continued the contractual relations existing between them until the cessation of hostilities between the United States and the German nation, which necessarily extended the time of payment of the note. In addition to this, the complainants at the earliest opportunity procured the German marks necessary to liquidate the advance, with interest, and tendered same to the Custodian, which tender was refused, and the complainants in their bill make tender of said marks. Under this state of the facts, I do not think the law contended for in defendant's brief is applicable.

Under the circumstances of this case, the proper decree to be made is one requiring the repayment to complainants of the amount paid the Custodian in liquidation of said note, the deposit by the complainants with the clerk of this court of the German marks tendered the

·Custodian, to be paid over to the person entitled to receive same, and, upon such deposit being made, the surrender to complainants of said promissory note.

It will be so decreed.